IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, as subrogee of Specialized Transport & Rigging, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASPEN CUSTOM TRAILERS, INC.,<br><br>Defendants. | Case No. 3:21-cv-00077-TMB<br><br>**ORDER ON DEFENDANT ASPEN CUSTOM TRAILERS, INC.'S MOTION TO DISMISS (DKT. 4)** |

## I. INTRODUCTION

Before the Court is Defendant Aspen Custom Trailers, Inc.'s ("Aspen") Motion to Dismiss (the "Motion").[1] Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") opposes the Motion.[2] For the reasons discussed below, the Court finds it lacks personal jurisdiction over Aspen and **GRANTS** the Motion on that basis.

## II. BACKGROUND

Plaintiff National Union is a Pennsylvania insurance company registered to do insurance business in Alaska.[3] National Union brings this lawsuit as a subrogee of Specialized Transport & Rigging, LLC ("Specialized"), an Alaska company.[4] Defendant Aspen is a Canadian company

---

[1] Dkt. 4 (Motion); Dkt. 5 (Memorandum); Dkt. 10 (Reply).

[2] Dkt. 9 (Opposition).

[3] Dkt. 1 at 1 (Complaint).

[4] *Id.* at 1–2.

1

with its principal place of business in Alberta, Canada.[5] Aspen has no offices, employees, or facilities in Alaska and is not registered to do business in Alaska.[6]

The facts underlying this lawsuit are as follows. In 2014, Specialized purchased a custom heavy-duty trailer assembly from Aspen and purchased insurance coverage for the trailer from National Union.[7] National Union and Specialized claim that this trailer, informally called the "Bomb Cart," broke in 2019 while traveling on the Elliot Highway.[8] A few days later, Specialized submitted an insurance claim for damages with National Union.[9] According to National Union, it paid Specialized $36,362.00 for preliminary repairs and $26,005.08 for towing charges and offered Specialized a claim settlement of $184,228.00 on the loss of the trailer, which Specialized rejected.[10] Specialized then filed a lawsuit against both National Union and Aspen in this Court, raising claims for casualty loss and lost profits against National Union and for breach of contract and breach of implied warranty of fitness for a particular purpose against Aspen.[11] Specialized asserts in that lawsuit that the Bomb Cart was defective.[12] With Specialized's lawsuit pending against National Union and Aspen, National Union separately filed this lawsuit against Aspen.

---

[5] *Id.* at 2.

[6] Dkt. 4-1 at 2 (Zork Declaration).

[7] Dkt. 1 at 3.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 3–4.

[11] Case No. 3:20-cv-00188-TMB, Dkt. 24 at 7–9 (Specialized action against National Union and Aspen).

[12] *Id.*

National Union raises claims against Aspen for product liability, breach of implied warranty for fitness for a particular purpose, and common law indemnification.[13]

In this Motion, Aspen argues National Union's Complaint should be dismissed either (1) under Federal Rule of Civil Procedure ("Rule") 12(b)(4) and/or Rule 12(b)(5) because National Union served the wrong entity, (2) under Rule 12(b)(2) because the Court lacks personal jurisdiction over Aspen, or (3) under Rule 12(b)(6) because National Union fails to state a claim upon which relief can be granted.[14] As discussed below, the Court concludes it lacks personal jurisdiction over Aspen and, consequently, finds it unnecessary to address Aspen's remaining arguments for dismissal.

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(2), a defendant may move to dismiss a case on the basis that the Court lacks personal jurisdiction over them.[15] On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction.[16] In evaluating the defendant's motion, "[t]he court may consider evidence presented in affidavits to assist it in its determination."[17] Where, as here, the court bases its decision on written materials instead of

---

[13] Dkt. 1 at 4–7.

[14] *See generally* Dkt. 5.

[15] Fed. R. Civ. P. 12(b)(2).

[16] *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[17] *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

3

holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."[18]

"There are two independent limitations on a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule, and constitutional principles of due process."[19] Here, Alaska law authorizes courts within the state to exercise jurisdiction to the fullest extent permitted by federal due process.[20] Thus, the Court need only examine whether exercising jurisdiction in this case comports with due process.[21]

A court may exercise personal jurisdiction over a defendant consistent with due process only if the defendant has "'certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"[22] "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes," i.e., that the defendant is subject to "general" jurisdiction in the forum, "a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the

---

[18] *Schwarzenegger*, 374 F.3d at 800 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).

[19] *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1064 (S.D. Cal. 2019). The applicable state personal jurisdiction rule is Alaska's long-arm statute. *See Schwarzenegger*, 374 F.3d at 800 ("Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.").

[20] *Alaska Telecom, Inc. v. Schafer*, 888 P.2d 1296, 1299 (Alaska 1995).

[21] *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

[22] *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

4

plaintiff's claim."[23] National Union argues primarily that the Court has specific jurisdiction over Aspen.

A court has specific jurisdiction over a non-resident defendant only when three requirements are met: "(1) the defendant either 'purposefully direct[s]' its activities or 'purposefully avails' itself of the benefits afforded by the forum's laws; (2) the claim 'arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [] comport[s] with fair play and substantial justice, i.e., it [is] reasonable.'"[24] The plaintiff bears the burden to prove the first two requirements.[25] "If the plaintiff succeeds in satisfying both of the first two [requirements], the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."[26]

"For part one of this three-part test," courts "typically analyze[] cases that sound primarily in contract"—as this case does—"under a 'purposeful availment' standard."[27] "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business

---

[23] *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

[24] *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (alterations in original).

[25] *Id.*

[26] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

[27] *See Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Courts use the purposeful availment standard in products liability cases. *See Specter v. Rainbow King Lodge, Inc.*, No. 3:17-CV-00194-TMB, 2018 WL 11266538, at *4 (D. Alaska June 13, 2018) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011)). In contrast, for cases involving intentional tort claims, courts use a purposeful direction standard. *See id.*; *Boschetto*, 539 F.3d at 1016.

within the forum state.'"²⁸ Courts evaluate "the quality and nature" of the defendant's contacts with the forum.²⁹ "Merely random, fortuitous, or attenuated contacts are not sufficient."³⁰

While the United States Supreme Court has rejected a "mechanical" test to evaluate purposeful availment,³¹ it has recognized two concepts that are particularly helpful here. First, "the formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction."³² A plaintiff must show something more, such as "a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State,"³³ efforts by the defendant to "continuously and deliberately exploit[]" the forum state's market through salespeople or advertising,³⁴ examples of the defendant closing sales or performing services in the forum state,³⁵ or a choice-of-law provision selecting the law of the forum state.³⁶ In contrast, a contract does "not give rise to specific jurisdiction in the forum" where "the business relationship between the parties was fleeting or its center of gravity lay elsewhere."³⁷ As the United States Supreme Court has said,

---

²⁸ *Boschetto*, 539 F.3d at 1016 (quoting *Sher*, 911 F.2d at 1362).

²⁹ *Int'l Shoe Co.*, 326 U.S. at 319.

³⁰ *Picot*, 780 F.3d at 1211.

³¹ *Burger King*, 471 U.S. at 478.

³² *Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478); *see also Picot*, 780 F.3d at 1211 ("[A] contract alone does not automatically establish minimum contacts in the plaintiff's home forum.").

³³ *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (quoting *Burger King*, 471 U.S. at 479–80)).

³⁴ *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984).

³⁵ *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021).

³⁶ *Burger King*, 471 U.S. at 482.

³⁷ *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020).

the defendant's contacts with the forum "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship *centered* there."[38] Thus, when evaluating whether a contract gives rise to jurisdiction, courts consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[39]

Second, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."[40] For example, the United States Supreme Court has explained, "[i]n *Hanson v. Denckla*, . . . it was no doubt foreseeable that the settlor of a Delaware trust would subsequently move to Florida and seek to exercise a power of appointment there; yet we held that Florida courts could not constitutionally exercise jurisdiction over a Delaware trustee that had no other contacts with the forum State."[41]

## IV. DISCUSSION

The Court concludes it does not have personal jurisdiction over Aspen in this case.

### A. General Personal Jurisdiction

As an initial matter, the Court finds Aspen is not subject to general personal jurisdiction in Alaska. Aspen is neither incorporated in Alaska nor has its principal place of business in Alaska.[42]

---

[38] *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden*, 571 U.S. at 285) (emphasis added).

[39] *Glob. Commodities*, 972 F.3d at 1108.

[40] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

[41] *Id.* at 295–96.

[42] *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

And National Union provides no evidence that Aspen is otherwise "essentially at home" in Alaska.[43]

## B. Specific Personal Jurisdiction

Next, the Court concludes it also lacks specific jurisdiction over Aspen because National Union has not established the first requirement of the Ninth Circuit's three-part test: that Aspen "purposefully avail[ed]" itself "of the privilege of conducting activities" in Alaska.[44]

To begin, the underlying contractual relationship between Specialized and Aspen is centered in Canada, not Alaska: Aspen neither executed the at-issue contract nor performed any obligations stemming from the contract in Alaska.[45] It is undisputed that, consistent with Aspen's "general business practice,"[46] Aspen executed the contract in its office in Alberta, Canada; Aspen manufactured the Bomb Cart in Alberta; no Aspen employee or representative traveled to Alaska for business related to the sale and manufacture of the Bomb Cart; and Specialized picked up the Bomb Cart in Alberta for transport back to Alaska.[47] The record indicates, therefore, that aside from contracting with an Alaska company, Aspen had virtually no contact with Alaska in connection with the underlying deal.

Despite this apparent disconnect between the underlying deal and the forum, National Union argues the Court has specific jurisdiction over Aspen for three reasons. First, Aspen "admits

---

[43] *See id.* at 139, n.19 (leaving open "the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State").

[44] *Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802).

[45] *See Hanson v. Denckla*, 357 U.S. 235, 251–52 (1958).

[46] Dkt. 4-1 at 3.

[47] *Id.* at 3–4; *see generally* Dkt. 9.

that it sold the trailer to [Specialized], an Alaska business" and "kn[ew] that the equipment would be used in Alaska."[48] To support the proposition that these facts confer jurisdiction, National Union cites a 2005 decision by the Alaska Supreme Court, *Polar Supply Company, Inc. v. Steelmaster Industries, Inc.*,[49] in which the Alaska Supreme Court held that a Canadian manufacturer purposefully availed itself of the privilege of doing business in Alaska by knowingly contracting with an Alaska company, attending a trade show in Nevada, and advertising in the United States, among other contacts.[50] Second, National Union argues that "Alaska's long arm statute . . . reaches foreign corporations that place product into the stream of commerce that cause injury to persons or property in the state."[51] For this proposition, National Union relies on a 1980 Alaska Supreme Court decision, *Volkswagenwerk, A. G. v. Klippan, GmbH*,[52] holding that "[w]hen a manufacturer voluntarily places its product in the general stream of commerce without restriction, the 'minimum contact' requirement is satisfied in all forums where it is foreseeable to the manufacturer that the product may be marketed."[53] Finally, National Union points to two documents relating to the Bomb Cart that refer to the United States: (1) the purchase agreement, which identifies the "Territory" as "US Northwest," and (2) a "Certificate of Origin For A Vehicle," which National Union calls an "American form," presumably because it includes fields labeled "State" and

---

[48] Dkt. 9 at 7.

[49] 127 P.3d 52 (Alaska 2005); Dkt. 9 at 5–6.

[50] *Polar Supply*, 127 P.3d at 56.

[51] Dkt. 9 at 5

[52] 611 P.2d 498 (Alaska 1980).

[53] Dkt. 9 at 6 (quoting *Volkswagenwerk, A. G. v. Klippan, GmbH*, 611 P.2d 498, 500–501 (Alaska 1980).

"County."⁵⁴ For the reasons below, the Court finds each of these arguments insufficient to establish purposeful availment.

First, as discussed above, a contract alone is not enough, and the contract underlying this case did not create a sufficient connection between Aspen and Alaska to establish purposeful availment.⁵⁵ Aspen executed the contract in Canada and designed the contract such that it could perform all obligations in Canada.⁵⁶ On these facts, the Court cannot conclude that Aspen "envisioned continuing and wide-reaching contacts" in Alaska.⁵⁷ In short, the contract was not "centered" in Alaska and, without more, does not provide a basis for jurisdiction.⁵⁸

Second, it is not enough that Aspen *knew* Specialized was an Alaska company or that Aspen *knew* the Bomb Cart would be used in Alaska because foreseeability is not the criterion.⁵⁹ Rather, National Union must show that Aspen "deliberately 'reached out beyond' its home."⁶⁰ National Union provides no indication that Aspen took such deliberate action. For example, National Union

---

⁵⁴ *Id.* at 7 (highlighting "State of" and "County of" on the certificate).

⁵⁵ *See Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478); *Burger King*, 471 U.S. at 478 (commenting that "an individual's contract with an out-of-state party alone . . . clearly" cannot establish jurisdiction); *see also Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum.").

⁵⁶ Dkt. 4-1 at 3.

⁵⁷ *Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 479–80). *Compare Glob. Commodities*, 972 F.3d at 1108–10 (finding personal jurisdiction where a defendant "sustained a relationship with [the plaintiff] over several years and hundreds of contracts, purchasing millions of dollars of goods" and had "acknowledged its ongoing obligations to make payments in [the forum state]") *with Boschetto*, 539 F.3d at 1017 (finding no purposeful availment where the parties contracted for "the sale of one item" with "no ongoing obligations" in the forum).

⁵⁸ *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden*, 571 U.S. at 285).

⁵⁹ *See World-Wide Volkswagen*, 444 U.S. at 295.

⁶⁰ *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden*, 571 U.S. at 285).

does not allege Aspen targeted Specialized or otherwise targets Alaska companies, through advertising or other methods. The record reflects instead that Aspen, through its general practices, has minimized its contacts with Alaska, even where, as here, it contracts with an Alaska company. Without disputing these practices, National Union argues that by simply contracting with an Alaska company to manufacture equipment it knew would be used in Alaska, Aspen purposefully availed itself of the Alaska market.[61] To the extent *Volkswagenwerk* and *Polar Supply* suggest foreseeability of this kind establishes purposeful availment, the Alaska Supreme Court appears to have taken an expansive approach to specific jurisdiction that has been foreclosed by the United States Supreme Court.[62] The Court therefore finds these Alaska Supreme Court decisions unpersuasive here.[63]

Third, National Union's stream-of-commerce theory, as articulated in *Volkswagenwerk*,[64] has never found support in a majority opinion of the United States Supreme Court and, even if it had, would not apply in this case. In *Asahi Metal Industry Co. v. Superior Court of California,*

---

[61] *See* Dkt. 9 at 8.

[62] *See World-Wide Volkswagen*, 444 U.S. at 295; *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1783 (2017) (rejecting argument that the defendant's "decision to contract with a California company" provided a sufficient basis for personal jurisdiction in California); *see, e.g.*, *Pac. Helicopter Tours, Inc. v. Dragonfly Aviation, LLC*, No. CV 19-00295 ACK-RT, 2019 WL 5053054, at *7 (D. Haw. Oct. 8, 2019) ("While Pacific Helicopter points to Dragonfly's knowledge that the 'helicopter would be delivered and operated in Hawaii,' it was Pacific Helicopter who performed this delivery and conducted these operations. Failure to consider this distinction improperly shifts the minimum contacts analysis to 'defendant's contacts with persons who reside' in the forum State, rather than 'the defendant's contacts with the forum State itself.'") (quoting *Walden*, 571 U.S. at 285) (internal citations omitted).

[63] These Alaska Supreme Court decisions, while entitled to great respect, are not binding on this Court with respect to the due process analysis required here. *See Watson v. Estelle*, 886 F.2d 1093, 1095 (9th Cir. 1989) (a state supreme court opinion construing the United States Constitution is not binding on federal courts).

[64] *See* Dkt. 9 at 6–7 (quoting *Volkswagenwerk*, 611 P.2d at 500–01).

*Solano County*,[65] Justice O'Conner writing for four justices endorsed the view that "the Due Process Clause . . . require[s] something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce."[66] In a four-justice concurrence, Justice Brennan advocated for the less demanding approach articulated in *Volkswagenwerk*. In his view, "jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause" without "a showing of additional conduct."[67] Neither theory won the day, although the Ninth Circuit has since endorsed Justice O'Conner's approach.[68] But even applying Justice Brennan's comparatively lax version of the stream-of-commerce theory, the Court cannot conclude on this record that Aspen purposefully availed itself of the privilege of doing business in Alaska. Justice Brennan defined the stream of commerce as "the *regular and anticipated* flow of products from manufacture to distribution to retail sale," contrasting cases involving "isolated occurrence[s]."[69] National Union provides no evidence of a "regular and anticipated flow of products" from Aspen to Alaska here, instead showing only one, isolated sale.

Finally, Aspen has not purposefully availed itself of the privilege of doing business in Alaska by broadly targeting the United States. On this point, *Polar Supply* is directly contradicted by subsequent federal precedent. Six years after *Polar Supply*, the United States Supreme Court in *J. McIntyre Machinery, Ltd. v. Nicastro*[70] rejected the argument that a defendant "purposefully

---

[65] 480 U.S. 102 (1987) (plurality).

[66] *Id.* at 111.

[67] *Id.* at 117–18 (J. Brennan, concurring)

[68] *See, e.g.*, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007).

[69] *Asahi*, 480 U.S. at 117–18 (J. Brennan, concurring) (emphasis added).

[70] 564 U.S. 873 (2011) (plurality).

availed itself of the New Jersey market" by agreeing to sell machines in the United States and attending "trade shows in several States but not in New Jersey," even though the defendant "might have predicted" its machines would end up in New Jersey.[71] The Court reasoned, "These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market."[72] Here too, Aspen's contacts, including its reference to the "US Northwest" territory, "may reveal an intent to serve the U.S. market, but they do not show that [Aspen] purposefully availed itself of the [Alaska] market."[73]

The Court concludes it lacks personal jurisdiction over Aspen and **GRANTS** the Motion accordingly.

### C. Jurisdictional Discovery

The Court also denies National Union's request for jurisdictional discovery. District courts have "broad discretion to permit or deny [jurisdictional] discovery."[74] Courts ordinarily allow jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[75] However, a court may deny a request for jurisdictional discovery that is "based on little more than a hunch that it

---

[71] *Id.* at 882, 886 (opinion of Kennedy, J.).

[72] *Id.* at 886; *see also id.* at 888 (Breyer, J., concurring).

[73] *Id.* at 886; *see also LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 862 (9th Cir. 2022) (finding no jurisdiction where "[m]any of the allegations in the complaint pertain to Continental's nationwide contacts rather than Continental's contacts with Arizona specifically").

[74] *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

[75] *Boschetto*, 539 F.3d at 1020 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).

13

might yield jurisdictionally relevant facts."[76] Likewise, a "[c]ourt need not permit even limited discovery" where the "plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants."[77]

National Union requests jurisdictional discovery into whether Aspen is subject to "general personal jurisdiction" in Alaska.[78] As explained above, the Court can comfortably conclude based on the present record that Aspen is not subject to general jurisdiction in Alaska. Aspen is neither incorporated in Alaska nor has its principal place of business in Alaska. And National Union has provided no indication that this is "an exceptional case" in which "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State."[79] The Court denies National Union's request for jurisdictional discovery accordingly.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Aspen's Motion to Dismiss.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 28th day of February, 2022.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[76] *Id.*

[77] *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995)).

[78] Dkt. 9 at 5.

[79] *Daimler AG*, 571 U.S. at 139, n.19.